1                    UNITED STATES DISTRICT COURT

2              FOR THE WESTERN DISTRICT OF WISCONSIN

3       * * * * * * * * * * * * * * * * * * * * * * * * *

4       UNITED STATES OF AMERICA,

5              Plaintiff,

6         -vs-                          Case No. 07-CR-116

7       TIMOTHY SWEETLAND,              Madison, Wisconsin
                                        February 13, 2008
8              Defendant.               1:20 p.m.

9       * * * * * * * * * * * * * * * * * * * * * * * * *

10         STENOGRAPHIC TRANSCRIPT OF SENTENCING HEARING
              HELD BEFORE CHIEF JUDGE BARBARA B. CRABB
11

12      APPEARANCES:

13      For the Plaintiff:  Office of the United States Attorney
                            BY:  AUSA ROBERT ANDERSON
14                          660 West Washington Avenue
                            City Station, Ste. 303
15                          Madison, Wisconsin  53703

16      For the Defendant:  Jones Law Office
                            BY:  ATTORNEY WILLIAM JONES
17                          P.O. Box 44188
                            Madison, Wisconsin  53744-4188
18
        Also present:       Timothy Sweetland, defendant
19                          Rich Williams of Pretrial Services

20

21

22
                                Lynette Swenson
23                              Federal Court Reporter
                                United States District Court
24                              120 N. Henry St., Room 520
                                Madison, WI  53703
25                              (608) 255-3821

1        (Call to order)

2        THE CLERK:  Now calling Case 07-CR-116-C-01.

3    United States of America versus Timothy M. Sweetland is

4    called for sentencing.  May we have the appearances,

5    please.

6        MR. ANDERSON:  United States appears by

7    Assistant U.S. Attorney Robert Anderson.

8        MR. JONES:  Mr. Sweetland is here in person and

9    with his attorney William Jones.

10        THE COURT:  Thank you.  Mr. Sweetland, before

11   we do anything else, I want to take this opportunity to

12   advise you that you have the right to appeal from any

13   sentence imposed on you today.  If you think this

14   sentence is illegal in any respect, you can appeal to

15   the Court of Appeals for the Seventh Circuit.  Mr. Jones

16   is obligated to continue to represent you at Government

17   expense unless he would be relieved of that obligation

18   by the Court of Appeals, and if the Court of Appeals did

19   relieve him of the obligation, it would appoint new

20   counsel to represent you, still at Government expense.

21   Do you understand that?

22        THE DEFENDANT:  Yes, your Honor, I do.

23        THE COURT:  And have you read the pre-sentence

24   report and the addendum?

25        THE DEFENDANT:  Yes, I have, Your Honor.

1          THE COURT:  Do you have any objection to

2     anything in the pre-sentence report that Mr. Jones did

3     not raise on your behalf?

4          THE DEFENDANT:  Everything Mr. Jones has done I

5     understand.

6          THE COURT:  Okay.  And Mr. Jones, for the

7     record you've read the pre-sentence report and the

8     addendum?

9          MR. JONES:  Yes.

10          THE COURT:  And if I understand it correctly,

11     you have two basic objections; one is to the not

12     counting the convictions in California as related, and

13     the other one is whether Mr. Sweetland should get a

14     two-level upward adjustment because of his role in the

15     conspiracy?

16          MR. JONES:  That's correct, Your Honor.  Also

17     somewhat tied in with the priors in California, you

18     know, I do raise the issue that even if it were to be

19     added, he should be given a reduction back to criminal

20     history category III, that was in another filing based

21     upon his involvement -- therefore it would

22     overrepresent.  But it all is -- the two basic ones are

23     I think he should be criminal history category III no

24     matter how you go about it, and I don't think he should

25     be labeled a leader.

1          THE COURT:  Mr. Anderson, for the record you've

2     read the presentence report and the addendum?

3          MR. ANDERSON:  Yes, your Honor.

4          THE COURT:  And the Government had no

5     objections?

6          MR. ANDERSON:  That's correct, Your Honor.

7          THE COURT:  Do you want to say anything about

8     the criminal history and how -- and considering the two

9     California convictions as related?

10         MR. ANDERSON:  Yes.  The two California

11    convictions, they don't fall under the criteria for

12    counting them as one or counting them once as a

13    conviction.  They are not the same crime, they are not

14    the same course of conduct.  They are not even sentenced

15    together by the reference to the record here.  He was --

16    he pled to and was sentenced on one and went on with the

17    other case for separate disposition on that.

18         So these are different events, not part of a single

19    common scheme or plan.  They weren't consolidated for

20    trial and sentencing, and so as noted in the Pretrial

21    Services response, it does not fit the criteria for

22    grouping those together.  So I think that is correct as

23    to the criminal history.

24         So I think the criminal history calculation is

25    correct in regard to that, and I do not believe that his

1    criminal history overrepresents his past history and

2    that it appropriately represents his history looking at

3    the offenses and the time frame between them, and it

4    also correctly accounts, gives him the two criminal

5    history points because he was on status supervision with

6    one of those offenses during the time that he was

7    involved in this conspiracy charge as well.  So all his

8    criminal histories are correct.

9         THE COURT:  Mr. Jones, do you want to add

10   anything?

11        MR. JONES:  Well, Your Honor, just -- I

12   provided -- the two -- the moving him into category IV

13   occurred as a result of the addendum.  He was originally

14   a category III, and so I don't mean to be ambushing the

15   Court with this information, you know, but I did provide

16   a letter indicating why I think he should be in category

17   III on February 11th.  I just -- since it's February

18   13th, I want to make sure the Court has it.  I can

19   certainly summarize.

20        THE COURT:  I thought I read it, but I don't

21   see it -- here it is, yeah.

22        MR. JONES:  Docket number 42.

23        THE COURT:  This is what I read yesterday,

24   right.

25        MR. JONES:  Okay.  This case, there was no

1  intervening arrest between these two.  I don't think

2  people -- anyone contests that.  They were not -- they

3  were consolidated for trial.  It just one -- one charge,

4  the drug charge was resolved before the forged checks

5  case logistically.  I suppose if they had thought ahead

6  of time, they could have just said well, let's keep that

7  one open until you decide whether you want to go to

8  trial on the checks or not.  They could have handled it

9  a different way.  And I guess my point is they end up

10  with five points instead of three really as a matter of

11  really just timing, not severity, not as a specific

12  desire to give him a certain sentencing for each one

13  separately.

14       He got time served on the drug one and they moved

15  on with the checks.  I think they should be grouped.

16  They were consolidated under the same charging document,

17  but when he resolved his drug case as a matter of

18  logistics, they gave it a new case number, and I think

19  that's a subtle, I guess, calendaring or scheduling

20  handling of those two issues, not a clearly separated

21  two different nongroupable convictions.  So I think --

22            THE COURT:  Well, my understanding is that

23  there were these fraud charges outstanding.

24  Mr. Sweetland was arrested.  That was after a drug

25  purchase.  And that at the beginning he was charged for

1   both the drugs and a couple of fraudulent checks or

2   stole, fraudulently passing stolen checks, I'm not sure

3   which it was, and that he pleaded to the drug charges.

4   But in the meantime, the California authorities had

5   discovered a large number of additional instances in

6   which he had been passing stolen or forged checks.  So

7   they made that into a new Indictment that he was later

8   sentenced on.

9         MR. JONES:  I don't know about that last part

10   about them discovering more and therefore making a new

11   Indictment, but I guess the question is if it's

12   consolidated originally for trial but then separated for

13   any kind of number of reasons, does that make them

14   nongroupable?  If they had just amended that Complaint

15   and kept them together, they would have been grouped,

16   you know, they would have been resolved and he would

17   have been sentenced on, you know -- so admittedly, I'm

18   arguing a technical point, but grouping really is kind

19   of a technical point.  And he was originally charged

20   with one document -- with one charging document.  There

21   was not an intervening arrest.  And I think that that

22   standing alone would group them, but also if you look at

23   the totality of the circumstances surrounding it, it

24   really wasn't, in my opinion, a logistical maneuver in

25   that well, he got time served on the drugs and they

 1  moved forward on the forging of the document or the use

 2  of stolen checks.

 3       And so because of that, I think it should be

 4  grouped and only given three points.

 5            THE COURT:  Any further comment, Mr. Anderson?

 6            MR. ANDERSON:  I guess Mr. Jones's argument is

 7  well, if this had happened a different way, it would be

 8  treated differently, but that doesn't -- that doesn't

 9  substantiate that these fall under the criteria that the

10  guidelines set forth.  And we could engage in any number

11  of if things were different, this would apply

12  differently, but that's not what happens here.

13       So I think under the guidelines and existence at

14  the time that we are applying here, this is counted

15  appropriately in the PSR.

16            THE COURT:  Well, I'm looking at 4A1.2(a)(2)

17  which says if there's no intervening arrest, which there

18  wasn't here, prior sentences are counted separately

19  unless, and then (A), the sentence has resulted from

20  offenses contained in the same charging instrument.  And

21  I understand Mr. Jones to be saying that that's what

22  happened, that these were part of the same charging

23  instrument, but for some reason they were separated

24  after Mr. Sweetland or in connection with his sentencing

25  on the drug charges.  So it's sort of an unusual -- it's

1    a very unusual situation.

2         So Mr. Sweetland would still be subject to --

3         MR. ANDERSON:  If I might to offer the

4    distinction which I think the addendum is trying to

5    point out.  That sentence the Court just read refers to

6    sentences resulting from offenses contained in the same

7    charging instrument.  That's anticipating that the

8    sentences, each of the sentences that were imposed, came

9    out of the same charging -- came out of the same

10   charging document, and as the Court has noted, it's

11   unusual, but what we have here is we have an original

12   charging document which contained both distinct

13   offenses, they aren't part of the same course of

14   conduct, but they're in the same charging document.  But

15   he pleads guilty to the drug counts and the other counts

16   are dismissed and charged in a separate charging

17   document, which ultimately means that each of the

18   sentences, the sentencing on the drugs and the

19   sentencing on the burglary-related, forgery-related

20   charges are sentences on separate charging documents.

21   That's the distinction that I think is in this case.

22   But it is unusual that they originate in a charging

23   document, that they are in the same thing, but that's

24   not what the end result is.

25         THE COURT:  Well, if they were counted

1  together, which is what was done in the pre-sentence

2  report originally as I understand it, then

3  Mr. Sweetland's criminal history score would be VI; is

4  that correct, Mr. Williams?  But you did not include in

5  that -- I'm looking at paragraph 40 of the pre-sentence

6  report -- you didn't include in that any criminal

7  history points for Mr. Sweetland having committed this

8  offense while he's on probation.

9          AGENT:  That's correct, in the original

10  pre-sentence report.

11          THE COURT:  I'm sorry?

12          AGENT:  In the original pre-sentence I did not

13  assess two points for being on probation at the time of

14  the offense.  I did count the two convictions in

15  California as being separate.

16          THE COURT:  Could you come over here a minute,

17  Mr. Williams?

18      (Pause        1:35-1:43 p.m.)

19          THE COURT:  Mr. Williams, why don't you show

20  those charts to Mr. Anderson and Mr. Jones.  (Pause)

21  Now that you've seen those, did either of you want to

22  say anything further?

23          MR. JONES:  I guess I would.  The point that

24  Mr. Williams was making was that in the course of

25  handling after this one arrest and one charging document

1  and it ended up being reissued, there were new charges

2  that were added to the next one.  Instead of two checks,

3  they put together all the checks and added on.  But I

4  don't think that that affects the grouping issue.  I

5  think the grouping issue has to do with what the

6  charging document is.  And you know, I mean really my

7  point is why do we group?  I think we group because when

8  a person is arrested and charged, it shouldn't end up

9  being more than three points, just, you know, that

10  arrest occurs and there's kind of a course of litigation

11  and everything that occurs, because from that point

12  forward, and he ends up getting his sentence, and it

13  shouldn't just kind of add up because of the way the

14  Court kind of handles it or if they have to reissue it

15  or this -- Mr. Sweetland informs me, and I have no

16  reason to doubt it, it makes sense, these new charges

17  came up and he pled guilty to the charges, but they held

18  it over pending resolution of the checks, and in the

19  process of him showing up to plead or to be sentenced to

20  everything, they said we have these new ones and the

21  judge said well, let's just handle what we've got

22  together and you can bring all these checks back in

23  another thing.

24       My point is, and I mentioned in the letter, this is

25  a issue of logistics, not severity.  This is I think why

1  we group.  He got arrested, they started prosecuting him

2  for crimes, and it ended eventually and that should be

3  three points.  I guess that's just where I fall.

4        THE COURT:  Mr. Anderson, anything else?

5        MR. ANDERSON:  No.  I would just say it's more

6  a matter of facts, not logistics.  If he had been

7  ultimately convicted on the original Indictment or

8  charging document on both offenses, even if they weren't

9  related, his argument would make sense.  But if charges

10  are dismissed off the charging document and there's a

11  separate charging document issued, on which he's

12  convicted, as I said earlier, we have two separate

13  charging documents that ultimately result in convictions

14  and the offenses themselves aren't related, have no

15  similarity.  There's no connection between the pattern

16  of conduct, so there's no other -- none of the other

17  factors apply.  So I don't think -- it's a matter of the

18  fact, not the logistics.

19        THE COURT:  Well, I'm trying to think, the

20  purpose of grouping related crimes is partly because the

21  idea is that you're looking to see whether somebody

22  engaged in criminal conduct was arrested and convicted

23  and then reengaged in criminal conduct and that's

24  important in determining the criminal history because

25  you're trying to decide whether somebody is likely to

1  reoffend after conviction and sentence.

2      So when two crimes are separated by an intervening

3  arrest, they are always treated separately.  It gets

4  more difficult in these areas where they are treated

5  similarly, either in the charging document or at

6  sentencing.  This one is peculiar, but I think in view

7  of the number of charges that were added to the document

8  after Mr. Sweetland pleaded guilty to the drug charges,

9  I will treat them as not related.

10      However, I think that to compensate because I can

11  because I think it's a close question, I will probably

12  reduce or impose a variance because I think category IV

13  does overstate Mr. Sweetland's criminal history.

14      Anything further then?  You wanted to talk about

15  his role in the offense.

16          MR. JONES:  I did.  And are you ruling that

17  there's a variance?  Because there's other issues I

18  think should also be compelling to put him in category

19  III, but if you just said you're going to use Rule 3, I

20  don't need to speak any more on that.

21          THE COURT:  Right.

22          MR. JONES:  Yes.  I did just want to talk

23  briefly about his role in the offense.  I know

24  Mr. Anderson wanted to -- is planning on presenting some

25  things, too, so I'll try and anticipate that.  But as

1  far as a leader organizer, I'm providing an affidavit

2  from Mr. Sweetland that I think goes to that, and it was

3  attached to that I believe February -- have you read it?

4  It was February 11th.  I filed an affidavit from

5  Mr. Sweetland about his role in the offense.  It's

6  relatively brief.  It was in a separate letter.  It was

7  Document 43.

8              THE COURT:  I don't think I've seen that.  Do

9  you have another copy of it?

10             MR. JONES:  I do.  Like I said, it's short.

11             THE COURT:  Oh, I do have it.  I do have it.

12             MR. JONES:  I'll come back and get it.

13             THE COURT:  Thanks.

14             MR. JONES:  Sure.  The electronic filing is

15  nice.

16             THE COURT:  But confusing.

17             MR. JONES:  Yeah.

18             THE COURT:  And I did read this.

19             MR. JONES:  In addition, I did point out in the

20  original objection to the PSR that there are certain

21  admissions made by -- Mr. Sweetland is being labeled as

22  a leader organizer based in my opinion on what Lauren

23  Pitchell says, because the only other person in this

24  conspiracy is Mike Kitchen and Mike Kitchen says he

25  really didn't know what was going on in California.  He

1  just placed an order or decided how much drugs he wanted

2  and they would show up on his doorstep.  He would send

3  the money.  So Lauren Pitchell admits that she's a

4  large-scale drug dealer.  She said she was moving 12

5  ounces of meth a week; some of it to Mike, but the other

6  half, the other six ounces to people around southern

7  California.  And she admitted she was the one who

8  obtained the drugs from Mike Kitchen and she was the one

9  who would ship the drugs to Mike Kitchen.  And

10  eventually Mr. Sweetland wasn't even part of this

11  operation because she and Kitchen went around his back

12  and she was getting the money.

13         THE COURT:  Right.

14         MR. JONES:  So Mr. Sweetland wasn't even

15  involved in that role.  But my point is the PSR really

16  does rely I think on one item and one fact that is true,

17  and that is, Lauren Pitchell would have never met Mike

18  Kitchen without Tim Sweetland.  Those two would have

19  never got together without Mr. Sweetland.  But I don't

20  think that fact alone labels one a participant in a

21  conspiracy, the leader of it, or even the organizer of

22  it.

23      I'm certainly not trying to raise anyone as more of

24  a leader than anyone else in this operation.  I'm not

25  trying to minimize Mr. Sweetland's participation.  But I

1  think it's unfair to label him as the leader or kingpin

2  when Mike Kitchen was the one who decided how much drugs

3  was going to be shipped.

4       THE COURT:  He's not being -- two points.  The

5  two-level increase doesn't make you a kingpin.  All it

6  does is say that you were a leader, manager, organizer,

7  supervisor.  It's the lowest level for an increase and I

8  think, you know, not only did he put Mr. Kitchen and

9  Ms. Pitchell together, but he set the price.  He told

10  Ms. Pitchell where to send the drugs, and he took a

11  larger share of the proceeds.  As I understand, at the

12  beginning he was taking the lion's share of the

13  proceeds.

14      So I think he qualifies for two levels.  He

15  certainly doesn't qualify for any more than two levels,

16  but he does qualify for a two-level enhancement.

17      Anything else?

18       MR. JONES:  Not within the PSR.  But I did just

19  have brief sentencing comments.

20       THE COURT:  Sure, sure.  I'm just talking about

21  objections.

22       MR. JONES:  Nothing else I don't think

23  objecting to the PSR.

24       THE COURT:  Okay.  And Mr. Sweetland, is there

25  anything you would like to say on your own behalf before

1  I sentence you?

2          THE DEFENDANT:  I sent an affidavit to you

3  which speaks everything I wanted to say.

4          THE COURT:  That's all that you wanted to say?

5          THE DEFENDANT:  Yes, Ma'am.

6          THE COURT:  Okay.  Mr. Jones.

7          MR. JONES:  Your Honor, a lot of the sentencing

8  argument that I prepared was within the PSR because I

9  really think that those were key issues that had to be

10 presented.  But I did also want to raise another -- the

11 one last item that the Court does have to consider and

12 that is the sentencing -- the possibility of sentencing

13 disparities.

14     There are three people here.  They were all

15 participants in moving drugs from California to

16 Wisconsin.  Mike Kitchen, as I pointed out in my letter,

17 ended up one year in jail with Huber as a result of his

18 participation, and he's the guy actually selling it to

19 people here in our state.  Lauren Pitchell I understand

20 gave her statement about Mr. Sweetland and to the best

21 of my knowledge received somewhere 4 1/2 years,

22 something like that.  I think that a sentence that would

23 go significantly more than Ms. Pitchell would be a

24 disparity that would be unfair.

25     I argued that I think the PSR should fall within 57

1    to 71 months.  I know that you said that you felt that

2    the two points should apply, and obviously you've ruled

3    on that, but that doesn't still mean that you can't

4    sentence below whatever range he falls in.  I think that

5    an appropriate sentence given his role, the sentencing

6    -- the other sentences that were handed out to the other

7    people would be -- an appropriate one would be 57

8    months.

9              THE COURT:  Thank you.  Mr. Anderson.

10             MR. ANDERSON:  I think sentence within the

11   advisory guidelines is appropriate in this case.  The

12   advisory guidelines are where they are because of the --

13   not only the quantity of drugs, but Mr. Sweetland's

14   history as we've seen.  Mr. Kitchen was allowed to plead

15   to state charges and receive a sentence there.  Without

16   his cooperation, this case wouldn't even be here.  We

17   wouldn't have prosecuted a case here in federal court of

18   the sources of supply of methamphetamine coming out of

19   California.  Without his cooperation, it would not have

20   been possible because no one else knew -- no one else

21   who got methamphetamine from Mr. Kitchen once it arrived

22   here, had any knowledge or connection to or any

23   information about his sources.  That all came from

24   Mr. Kitchen and whatever records and documents

25   Mr. Kitchen could supply and explain, which was -- they

1  were actually extraordinary records that Mr. Kitchen

2  maintained and was able to explain to us and provide

3  detailed explanation of what was going on.

4      Because those records, in a vacuum, couldn't

5  explain to us what negotiations, discussions,

6  arrangements were made between any of the parties such

7  that we would have been able to charge a conspiracy.  So

8  that is to that.

9      Ms. Pitchell, similarly her sentence was

10  appropriate because of her different standing in terms

11  of history and criminal history, and so I do recommend

12  that the Court sentence within the guidelines, the

13  advisory guidelines.

14          THE COURT:  Mr. Sweetland.

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  It's hard to figure out what kind

17  of person you are because there's so much missing from

18  your background, and there's a huge gap in which you had

19  no run-ins with the law enforcement and that may

20  indicate that you really were trying to live on the

21  straight and narrow during that period of time or it may

22  just indicate you were smart enough not to be caught.

23      But the first thing that struck me is that you're

24  59 years old and you're still dealing drugs.  Seems to

25  me to be an indication of a lack of -- definite lack of

1   maturity and lack of good judgment.  I realize that you

2   consider yourself a drug addict.  I'm not so convinced

3   that your addiction is as much a motivating factor in

4   your distribution of drugs as is your desire to make

5   money and an easier way than you might otherwise.  But I

6   hope you'll take advantage of the time you're going to

7   have to spend in prison and get some use out of it.

8   Learn -- maybe get some better insight into why you're

9   leading the kind of life that you are at your advanced

10  age.

11      I accept the plea agreement on the basis of my

12  findings that the offense of conviction adequately

13  reflects your criminal conduct and the plea agreement

14  does not undermine the statutory purposes of sentencing.

15  In determining your sentence, I will take into

16  consideration the advisory sentencing guidelines and the

17  statutory purposes of sentencing set forth in 18 United

18  States Code Section 3553(a).

19      The probation office has calculated the advisory

20  sentencing guidelines correctly in the addendum to the

21  pre-sentence report using the November 2007 manual.  The

22  base offense level is 26 because the offense and related

23  conduct involved at least 50 grams but less than 200

24  grams of methamphetamine.

25      You recruited Lauren Pitchell to assist in sending

1  methamphetamine to Mr. Kitchen.  You set the price,

2  instructed her where to send the drugs, and took a

3  larger portion of the proceeds.  That conduct warrants a

4  two-level increase because you recruited and directed

5  Ms. Pitchell during the conspiracy.

6      You're entitled to a three-level downward

7  adjustment because you've accepted responsibility for

8  your offense conduct and the Government has moved for

9  the additional reduction.  Your total offense level is

10 25.  Your criminal history places you in criminal

11 history category IV; however, I believe that category

12 overstates your likelihood of committing additional

13 crimes.

14     With a total offense level of 25 and a criminal

15 history category of IV, your advisory guideline

16 imprisonment range is 84 to 105 months, but giving you a

17 variance because of the overstatement of your criminal

18 history takes you down to 70 to 87 months.

19     The amount of methamphetamine attributable to you

20 falls near the high end of the drug quantity table for

21 base level offense 26.  This is your second conviction

22 for the distribution of illegal drugs and you were on

23 probation when you committed this crime, and also on

24 bond for a felony case.

25     Considering the nature and circumstances of the

1  offense and your history and characteristics, I believe

2  that a sentence of 87 months is necessary to hold you

3  accountable for your criminal conduct, protect the

4  community, and afford you the opportunity to participate

5  in treatment programs.

6       As to Count 1 of the Indictment, it is adjudged

7  that you are committed to the custody of the Bureau of

8  Prisons for imprisonment for a term of 87 months.  I

9  recommend you be afforded the opportunity for substance

10 abuse treatment and that you be afforded prerelease

11 placement in a residential re-entry center.

12      The term of confinement is to be followed by a

13 four-year term of supervised release subject to the

14 standard conditions.  In light of the nature of the

15 offense and your history of substance abuse, the

16 following special conditions are appropriate:

17      You are to register with local law enforcement

18 agencies and the state Attorney General as directed by

19 the supervising probation officer.  You are to submit

20 your person, residence, office or vehicle to a search

21 conducted by a probation officer at a reasonable time

22 and in a reasonable manner whenever the officer has

23 reasonable suspicion of contraband or evidence of a

24 violation of a condition of release.  Failure to submit

25 to a search may be a ground for revocation.

1    You shall warn any other residents that the

2    premises you are occupying may be subject to searches

3    pursuant to this condition.  You are to abstain from the

4    use of alcohol and illegal drugs and from association

5    with drug users and sellers and participate in substance

6    abuse treatment.  You shall submit to drug testing

7    beginning within 15 days of your release and 60 drug

8    tests annually thereafter.  The probation office may

9    utilize the Administrative Office of the courts' phased

10   collection process.  And you are to provide the

11   supervising probation officer any and all requested

12   financial information.

13   Further, it's adjudged that you are to pay a $100

14   criminal assessment penalty to the Clerk of Court

15   immediately following sentencing.  You do not have the

16   means to pay a fine without impairing your ability to

17   support yourself upon your release.

18   Anything further in this matter?

19   MR. JONES:  Your Honor, Mr. Sweetland is from

20   California and I would ask, if you would, that he be

21   placed in a facility closest to his home that would meet

22   the other requirements.

23   THE COURT:  I'll ask the probation officer to

24   make that request known to the Bureau of Prisons.

25   MR. ANDERSON:  Nothing else, Your Honor.

1          MR. JONES:  Nothing else.

2          THE COURT:  Thank you, Mr. Jones, for your help

3    in this case.

4          MR. JONES:  You're welcome.  It's my pleasure.

5        (Proceedings ended at this time)

6        (2:02 p.m.)

7

8          I, LYNETTE SWENSON, Certified Realtime and Merit

9    Reporter in and for the State of Wisconsin, certify that

10   the foregoing is a true and accurate record of the

11   proceedings held on the 13th day of February 2008,

12   before the Honorable Barbara B. Crabb, Chief Judge of

13   the Western District of Wisconsin, in my presence and

14   reduced to writing in accordance with my stenographic

15   notes made at said time and place.

16   Dated this 26th day of February 2008.

17

18

19                         /s/_____

20                         Lynette Swenson, CRR, RMR,
                                RPR, CBC
21                         Federal Court Reporter

22

23

24   The foregoing certification of this transcript does not
     apply to any reproduction of the same by any means
25   unless under the direct control and/or direction of the
     certifying reporter.