UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA,

               Plaintiff,

    vs.                         Case No. 07-CR-0116-S-01

TIMOTHY M. SWEETLAND,          Madison, Wisconsin
                             December 5, 2007
              Defendant.      1:14 p.m.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

TRANSCRIPT OF PLEA HEARING
HELD BEFORE THE HONORABLE JOHN C. SHABAZ

APPEARANCES:

For the Plaintiff:     Office of the United States Attorney
                     BY:  ROBERT ANDERSON
                     Assistant United States Attorney
                     P.O. Box 1585
                     Madison, WI  53701-1585

For the Defendant:     Jones Law Firm
                     BY:  WILLIAM R. JONES
                     P.O. Box 44188
                     Madison, WI  53744-4188

Also Present:         Timothy M. Sweetland, Defendant
                     Rich Williams, U.S. Probation Officer

Court Recorder:       Erica Clark
                     120 North Henry Street, Room 320
                     Madison, WI  53703

Transcription Service: S-B Transcription Service
                     141 Cedar Street
                     Brooklyn, WI  53521

*Proceedings recorded by electronic sound recording, transcript produced by certified transcription service.*

1      (Call to Order of the Court)

2            THE CLERK:  Case No. 07-CR-116-S-01, United States of

3  America versus Timothy M. Sweetland, is called for a plea

4  hearing.  May we have appearances, please?

5            MR. ANDERSON:  The United States appears by Assistant

6  U.S. Attorney Robert Anderson.

7            MR. JONES:  Mr. Sweetland is here in person and with

8  his attorney, William Jones.

9            THE COURT:  The Court has before it a proposed plea

10  agreement between the defendant and the United States where the

11  defendant has agreed to plead guilty to Count 1 of the

12  indictment in this case which charges a violation of Title 21,

13  United States Code, Section 846, and carries a minimum mandatory

14  penalty of five years in prison to a maximum penalty of 40 years

15  in prison.

16       Is it the understanding of counsel that the defendant plans

17  to enter a plea of guilty pursuant to the plea agreement,

18  Mr. Jones?

19            MR. JONES:  Yes, Your Honor.

20            THE COURT:  And is that the understanding of the

21  government as well?

22            MR. ANDERSON:  Yes, Your Honor.

23            THE COURT:  Mr. Sweetland, is it your understanding

24  that you will be entering a plea of guilty to the one-count

25  indictment pursuant to the plea agreement?

1          DEFENDANT SWEETLAND:  Yes, Your Honor.

2          THE COURT:  If that's the case then, I wish you would

3    please rise so the oath may be administered to you.

4              TIMOTHY M. SWEETLAND, DEFENDANT, SWORN

5          THE COURT:  The Court at this time will address the

6    defendant and advise him that he is now under oath and that if

7    he answers any of my questions falsely, his answers may later

8    be used against him in another prosecution for perjury or

9    making a false statement.  Is that your understanding, sir?

10         DEFENDANT SWEETLAND:  Yes, Your Honor.

11         THE COURT:  What is your full name?

12         DEFENDANT SWEETLAND:  Timothy Michael Sweetland.

13         THE COURT:  And how old are you, sir?

14         DEFENDANT SWEETLAND:  I'm 59 years old.

15         THE COURT:  How far did you go in school?

16         DEFENDANT SWEETLAND:  I went to the, two years at

17   Orange Coast College, junior college.

18         THE COURT:  And have you been treated recently for

19   any mental illness or addiction to narcotic drugs of any kind?

20         DEFENDANT SWEETLAND:  No, sir, I haven't.

21         THE COURT:  Are you currently under the influence of

22   any drug, medication, or alcoholic beverage of any kind?

23         DEFENDANT SWEETLAND:  No, sir.

24         THE COURT:  Have you received a copy of the indictment

25   pending against you--that is, the written charges made against

1   you in this case--and have you fully discussed those charges,

2   and the case in general, with Mr. Jones as your attorney?

3           DEFENDANT SWEETLAND:  Yes, Your Honor, I have.

4           THE COURT:  And are you fully satisfied with the

5   counsel, representation and advice given to you in this case by

6   Mr. Jones as your attorney?

7           DEFENDANT SWEETLAND:  Yes, Your Honor.

8           THE COURT:  Did you have the opportunity to read and

9   discuss the proposed plea agreement with your attorney before

10  you signed it?

11          DEFENDANT SWEETLAND:  Yes, I did.

12          THE COURT:  And did you read and discuss the plea

13  agreement with your attorney before you signed it, and did you

14  sign the proposed plea agreement willingly and knowing what is

15  in it?

16          DEFENDANT SWEETLAND:  Yes, Your Honor, I did.

17          THE COURT:  Does the plea agreement represent the

18  entire understanding that you have with the government?

19          DEFENDANT SWEETLAND:  Yes, Your Honor.

20          THE COURT:  Do you understand the terms of the plea

21  agreement?

22          DEFENDANT SWEETLAND:  Yes, Your Honor, I do.

23          THE COURT:  Has anyone made any other or different

24  promise or assurance of any kind to you in an effort to persuade

25  you to plead guilty in this case?

1        DEFENDANT SWEETLAND:  No, Your Honor, there hasn't.

2        THE COURT:  The terms of the plea agreement are merely

3 recommendations to the Court which the Court can reject without

4 permitting you to withdraw your plea of guilty and could then

5 impose a sentence that is more severe than you may be expecting.

6 Is that your understanding?

7        DEFENDANT SWEETLAND:  Yes, Your Honor.

8        THE COURT:  You understand that if the Court chooses

9 not to follow the terms of the proposed plea agreement but not

10 all the terms being binding, you will be given the opportunity

11 to withdraw your plea of guilty.  And if you choose not to

12 withdraw your plea, the Court may impose a more severe sentence

13 without being bound by the plea agreement.  Is that your

14 understanding, sir?

15        DEFENDANT SWEETLAND:  I understand that, Your Honor.

16        THE COURT:  Has anyone made any promise or assurance

17 to you of any kind in an effort to persuade you to plead

18 guilty?

19        DEFENDANT SWEETLAND:  No, Your Honor.

20        THE COURT:  Has anyone attempted in any way to force

21 you to plead guilty in this case?

22        DEFENDANT SWEETLAND:  No, Your Honor.

23        THE COURT:  Are you pleading guilty of your own free

24 will because you are guilty?

25        DEFENDANT SWEETLAND:  Yes, sir.

1          THE COURT:  I want you to understand that the offense

2   to which you are pleading guilty is a felony offense and if your

3   plea is accepted you will then be adjudged guilty of that

4   offense, and such determination may deprive you of valuable

5   civil rights, such as the right to vote, the right to hold

6   public office, as well as the right to serve on a jury, and the

7   right to possess any kind of firearm.

8      Do you understand that you may be deprived of those

9   valuable civil rights?

10          DEFENDANT SWEETLAND:  I understand that, Your Honor.

11          THE COURT:  Looking then at the November 26, 2007

12   letter addressed to Mr. Jones by the Assistant United States

13   Attorney Robert A. Anderson, do you believe that this is the

14   proposed plea agreement between you and the United States in

15   this case?

16          DEFENDANT SWEETLAND:  Yes, Your Honor.

17          THE COURT:  Looking at paragraph 1.  You've agreed to

18   plead guilty to Count 1 of the indictment in this case.  This

19   count charges a violation of Title 21, United States Code,

20   Section 846 which carries a minimum mandatory penalty of 5 years

21   in prison to a maximum penalty of 40 years in prison, a

22   $2 million fine, at least a 4-year period of supervised release,

23   and a $100 special assessment.  And in addition to these maximum

24   penalties, any violation of a supervised release term could lead

25   to an additional term of imprisonment pursuant to federal law.

1  You've agreed to pay the special assessment at or before

2  sentencing and you understand the Court will enter an order

3  pursuant to federal law requiring the immediate payment of that

4  special assessment.  In an appropriate case, a defendant could

5  be held in contempt of court and receive an additional sentence

6  for failing to pay the special assessment as ordered by the

7  Court.

8       Is that your understanding and agreement as it relates to

9  those provisions in paragraph numbered one of the proposed plea

10  agreement?

11       (Discussion off the record between Mr. Jones and

12  Mr. Sweetland.)

13            DEFENDANT SWEETLAND:  Yes, Your Honor.

14            THE COURT:  Looking at paragraph 2.  You acknowledge

15  by pleading guilty that you're giving up the following rights:

16  A, to plead not guilty and to persist in that plea; B, to a jury

17  trial; C, to be represented by counsel and, if necessary, have

18  the Court appoint counsel at trial and at every other stage of

19  the trial proceedings; D, to confront and cross-examine adverse

20  witnesses; E, to be protected from compelled self-incrimination;

21  F, to testify and present evidence; and G, to compel the

22  attendance of witnesses.

23       Is that your understanding and your agreement with those

24  provisions set forth in paragraph numbered two of your proposed

25  plea agreement?

1        DEFENDANT SWEETLAND:  Yes, Your Honor.

2        THE COURT:  Looking at paragraph 3.  You understand

3  that there may be evidence in this case that could be subjected

4  to DNA testing and, B, you could petition the district court

5  under federal law for DNA testing of evidence after conviction

6  in this case.  By your signature on this proposed plea

7  agreement, you have knowingly and voluntarily waived your right

8  to postconviction DNA testing of all evidence in this case.

9        And is that your understanding of those provisions in

10  paragraph numbered three?

11        DEFENDANT SWEETLAND:  Yes, Your Honor.

12        THE COURT:  Looking at paragraph 4.  You've agreed to

13  make a full, complete and truthful statement concerning your

14  involvement in criminal conduct as well as the involvement of

15  all other individuals known to you.  You've agreed to testify

16  fully and truthfully at any trials or hearings.  You understand

17  that this plea agreement is not conditioned upon the outcome of

18  any trial.  This agreement is, however, contingent upon complete

19  and truthful testimony in response to questions asked by the

20  Court, the prosecutor or lawyers for any party.

21        Is that your understanding and agreement of those

22  provisions in paragraph numbered four?

23        DEFENDANT SWEETLAND:  Yes, Your Honor, it is.

24        THE COURT:  Should you provide substantial assistance

25  before sentencing, the United States has agreed to move the

1    Court to impose a sentence reflecting that assistance.  Should

2    you provide substantial assistance after sentencing, the United

3    States agrees to move the Court pursuant to Federal Rule of

4    Criminal Procedure 35 to reduce your sentence to reflect that

5    assistance.  The decision whether to make such a request based

6    upon substantial assistance rests entirely within the discretion

7    of the United States Attorney's Office for the Western District

8    of Wisconsin.  And you acknowledge that even if the United

9    States makes such a request, the Court is not required to reduce

10   your sentence.

11        Is that your understanding and your agreement with those

12   provisions --

13              DEFENDANT SWEETLAND:  Yes, Your Honor.

14              THE COURT:  -- in paragraph 5?

15        Paragraph 6.  The United States further agrees that your

16   statements made pursuant to this plea agreement will not be

17   directly used against you.  However, direct use of financial

18   disclosures made by you pursuant to the plea agreement is

19   permitted, and indirect use of all statements is permitted.

20   This indirect use includes pursuing leads based upon information

21   provided by you as well as the use of the statements themselves

22   for impeachment and rebuttal purposes should you at any point be

23   allowed to withdraw your guilty plea.  These indirect uses are

24   permitted should you testify inconsistently with the substance

25   of these statements or otherwise present a position inconsistent

1   with them.

2       Is that your understanding and your agreement of those

3   provisions in paragraph numbered six, Mr. Sweetland?

4           DEFENDANT SWEETLAND:  Yes, Your Honor.

5           THE COURT:  Looking at paragraph 7.  The parties agree

6   pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that

7   the provisions of United States Sentencing Guideline Section

8   1B1.8 apply to this case and that information provided by you

9   under the terms of this proposed plea agreement will not be used

10  to determine your sentence except as otherwise indicated in

11  United States Sentencing Guideline Section 1B1.8(b).

12      Is that your understanding and agreement --

13          DEFENDANT SWEETLAND:  Yes.

14          THE COURT:  -- with those provisions --

15          DEFENDANT SWEETLAND:  Yes, Your Honor.

16          THE COURT:  -- in paragraph numbered seven?

17          DEFENDANT SWEETLAND:  Sorry.  Yes, Your Honor.

18          THE COURT:  Paragraph 8.  The United States agrees

19  that this guilty plea will completely resolve all possible

20  federal criminal violations that have occurred in the Western

21  District of Wisconsin provided that both of the following

22  conditions are met:  A, the criminal conduct relates to the

23  conduct described in the indictment and, B, the criminal conduct

24  was known to the United States as of the date of this proposed

25  plea agreement.  This agreement not to prosecute is limited to

1    those types of cases for which the United States Attorney's

2    Office for the Western District of Wisconsin has exclusive

3    decision-making authority.  You also understand the United

4    States will make its full file available to the Probation Office

5    for its use in preparing the presentence report, and the United

6    States also agrees to move to dismiss the remaining counts of

7    the indictment at the time of sentencing.

8        Is that your understanding and agreement with those

9    provisions in paragraph numbered eight?

10                DEFENDANT SWEETLAND:  Yes, Your Honor.

11                THE COURT:  Paragraph 9.  The United States agrees to

12   recommend that the Court in computing the advisory sentencing

13   guideline range, and in sentencing you, give you the maximum

14   available reduction for acceptance of responsibility, which

15   recommendation is based on facts currently known to the United

16   States and is contingent upon you accepting responsibility

17   according to the factors set forth in United States Sentencing

18   Guideline Section 3E1.1.  The United States is free to withdraw

19   this recommendation should you have previously engaged in any

20   conduct which is unknown to the United States and is

21   inconsistent with acceptance of responsibility, or should you

22   engage in any conduct between the date of this plea agreement

23   and the sentencing hearing which is inconsistent with acceptance

24   of responsibility.  And this recommendation is contingent upon

25   you signing this plea letter on or before November 28, 2007.

1       Is that your understanding and your agreement with those

2   provisions set forth in paragraph numbered nine of the proposed

3   plea agreement?

4            DEFENDANT SWEETLAND:  Yes, Your Honor.

5            THE COURT:  Looking at paragraph ten.  You've agreed

6   to complete a financial statement and return it to the United

7   States Attorney's Office within one week of your guilty plea

8   hearing.  You also agree that the Probation Office may disclose

9   to the United States the net worth and cash flow statements to

10  be completed by you in connection with the preparation of the

11  presentence report together with all supporting documents.

12      Is that your understanding and agreement with those

13  provisions in paragraph numbered ten?

14           DEFENDANT SWEETLAND:  Yes, Your Honor.

15           THE COURT:  Paragraph 11.  You understand that

16  sentencing discussions are not part of the plea agreement.  You

17  should not rely upon the possibility of a particular sentence

18  based upon any sentencing discussions between defense counsel

19  and the United States.

20      Is that your understanding and agreement with those

21  provisions in paragraph No. 11?

22           DEFENDANT SWEETLAND:  Yes, Your Honor.

23           THE COURT:  Your understanding of this agreement

24  conforms with that of the United States Attorney's Office and

25  you have signed this document knowingly and voluntarily as

1    suggested in the document, and by your signature you acknowledge

2    your understanding that the United States has made no promises

3    or guarantees regarding the sentence which will be imposed and

4    you also acknowledge your understanding that the Court is not

5    required to accept any recommendations which may be made by the

6    United States and that the Court can impose any sentence up to

7    and including the maximum penalties set forth in paragraph

8    numbered 1 of this proposed plea agreement.

9         Is that your understanding and agreement with those

10   provisions in paragraph numbered 12?

11             DEFENDANT SWEETLAND:  Yes, Your Honor.

12             THE COURT:  Looking at paragraph 13.  All plea

13   agreements must be approved by the United States Attorney or his

14   designee.  This plea proposal may or may not have been approved.

15   Mr. Anderson?

16             MR. ANDERSON:  It was approved, Your Honor.

17             THE COURT:  And consequently the Court will also

18   address the proposed plea agreement and determine whether or not

19   it will provide final acceptance as conditioned upon supervisory

20   approval.  Do you have any questions or need any additional

21   information at this time?

22             DEFENDANT SWEETLAND:  No, Your Honor, I don't.

23             THE COURT:  And do you understand those provisions in

24   paragraph numbered 13?

25             DEFENDANT SWEETLAND:  Yes, Your Honor, I do.

1       THE COURT:  Referring then once again to the proposed

2  plea agreement and the sentencing dialogue that you and I will

3  participate in.  The Court wants you to understand, as it's

4  stated in the proposed plea agreement, that if you do violate

5  any conditions of supervised release, you can be given

6  additional time in prison.  Is that your understanding?

7       DEFENDANT SWEETLAND:  Yes, Your Honor.

8       THE COURT:  Do you understand the possible

9  consequences of your plea?

10      DEFENDANT SWEETLAND:  Yes, Your Honor, I do.

11      THE COURT:  Under the Sentencing Reform Act of 1984,

12  the United States Sentencing Commission has issued advisory

13  guidelines for judges to follow in determining the sentence in

14  a criminal case.  Have you and your attorney, Mr. Jones, talked

15  about how the sentencing guidelines might apply to your case?

16      DEFENDANT SWEETLAND:  Yes, Your Honor, we have.

17      THE COURT:  Do you understand that the Court will not

18  be able to determine the guideline sentence for your case until

19  after the presentence report has been completed and both you

20  and the government have had an opportunity to challenge the

21  reported facts and the application of the guidelines

22  recommended by the probation officer, and that the sentence

23  imposed may be different from any estimate your attorney may

24  have given you.

25      Is that your understanding, sir?

1          DEFENDANT SWEETLAND:  Yes, Your Honor, it is my

2   understanding.

3          THE COURT:  Do you understand that after your

4   advisory guideline range has been determined this Court has the

5   authority in some circumstances to provide a variance from the

6   guidelines and impose a sentence that is either more severe or

7   less severe than the sentence called for by the guidelines?  Is

8   that your understanding and agreement as well?

9          DEFENDANT SWEETLAND:  Yes, Your Honor, it's my

10  understanding.

11         THE COURT:  Parole has been abolished and if you are

12  sentenced to prison you will not be released on parole.  Is that

13  your understanding, sir?

14         DEFENDANT SWEETLAND:  Yes, Your Honor, it is.

15         THE COURT:  Do you also understand that under some

16  circumstances you or the government may have the right to

17  appeal any sentence which I shall impose?  Do you understand

18  that, sir?

19         DEFENDANT SWEETLAND:  Yes, Your Honor, I do.

20         THE COURT:  I want you to further understand that you

21  have a right to plead not guilty to any offense charged against

22  you and to persist in that plea.  That you would then have the

23  right to a trial by jury, at which trial you would be presumed

24  to be innocent and the government would be required to prove

25  your guilt beyond a reasonable doubt.  You would have the right

1  to the assistance of counsel for your defense, the right to see

2  and hear all the witnesses and have them cross-examined in your

3  defense, the right on your own part to decline to testify unless

4  you voluntarily elected to do so in your own defense, and the

5  right to the issuance of subpoenas or compulsory process to

6  compel the attendance of witnesses to testify in your defense.

7        Do you understand that you do have those rights?

8              DEFENDANT SWEETLAND:  Yes, Your Honor, I do.

9              THE COURT:  Do you further understand that should you

10  decide not to testify or put on any evidence, these facts cannot

11  be used against you?  Do you understand that?

12              DEFENDANT SWEETLAND:  Yes, Your Honor.

13              THE COURT:  Do you further understand that by entering

14  a plea of guilty, if that plea is accepted by the Court there

15  will be no trial?  You will then have waived or given up your

16  right to a trial as well as those other rights associated with a

17  trial that have been described to you.

18        Is that your understanding and agreement?

19              DEFENDANT SWEETLAND:  Yes, Your Honor, it is.

20              THE COURT:  At this time you will be informed of the

21  charges once again to which you will be pleading and that will

22  be read to you from the indictment, and the government will also

23  explain the essential elements of the offense--that is, what the

24  government would be required to prove at trial--and will also

25  give you the opportunity to explain and consent to those facts

1   constituting the crime charged.  The Court will at this also

2   suggest that the United States will provide you that information

3   which the jury will receive from which you will be convicted of

4   this offense beyond a reasonable doubt.  Mr. Anderson.

5        MR. ANDERSON:  Thank you.  At trial the government

6   would present the following testimony and evidence to establish

7   the elements of the offense in Count 1 which is a conspiracy to

8   distribute 50 grams or more of methamphetamine, the first

9   element being that a conspiracy and agreement to distribute

10  methamphetamine existed between the defendants, Timothy

11  Sweetland, Lauren Pitchell, and others, specifically in this

12  instance an unnamed coconspirator Michael Kitchen, sometime

13  during the span of the time specified in the indictment, which

14  is June 16, 2005, on or about, through December 8, 2005.  And

15  the second element being that each defendant was a knowing and

16  willing member of that conspiracy and agreement.

17       The government would present testimony of Michael Kitchen.

18  He would testify that he lives in the Cadott area of Wisconsin

19  and would testify that he became acquainted with the defendant

20  Timothy Sweetland in June of about -- June of 2005 in the Cadott

21  area of Wisconsin and had discussions with Mr. Sweetland at that

22  time about methamphetamine.

23       Shortly after, Mr. Sweetland returned to California where

24  he lived at the time and he and Mr. Kitchen communicated and

25  worked out an agreement that Kitchen would send him money in

1  exchange for shipments of methamphetamine which were shipped to

2  Mr. Kitchen's Cadott residence.   Shipments, Mr. Kitchen would

3  testify, began in approximately July of 2005 and continued until

4  the police had discovered Mr. Kitchen's activity in December of

5  2005, at which time they executed a search warrant at his

6  residence.

7       Mr. Kitchen would testify regarding and demonstrate

8  meticulous records which he kept of each shipment.   Those

9  records would be offered in evidence which included Federal

10 Express and DHL shipment records and MoneyGram records.

11 Mr. Kitchen's testimony on the records would demonstrate that

12 Mr. Sweetland had sent Mr. Kitchen approximately 20 packages by

13 express carrier with at least 17 of those packages containing

14 some amounts of methamphetamine which ranged from 7 grams on the

15 smallest end up to as much as 28 grams on the larger end, all

16 beyond a reasonable doubt totaling more than 50 grams of

17 methamphetamine during the course of the conspiracy from July

18 until November of 2005, which was the last record of a shipment

19 that Mr. Sweetland himself made.

20      Mr. Kitchen would testify that in or about September 2005

21 when Kitchen placed a call to Mr. Sweetland for a shipment of

22 methamphetamine, that for some reason Mr. Sweetland did not have

23 any methamphetamine available and gave Mr. Kitchen the number of

24 Lauren Pitchell saying -- telling Mr. Kitchen she does my drop-

25 offs.   You can call her directly.   Kitchen would testify that he

1   did call Lauren Pitchell and made arrangements with her to

2   obtain methamphetamine shipments in exchange for money in the

3   same manner he had been sending money to Mr. Sweetland and

4   receiving packages.

5       Lauren Pitchell would testify that she was acquainted with

6   Timothy Sweetland and in about August of 2005 Sweetland told her

7   that he had a friend in Wisconsin that he was sending packages

8   of methamphetamine to and asked her to help him obtain

9   methamphetamine and send packages.  Sweetland gave Pitchell

10  Michael Kitchen's telephone number in Wisconsin and had her call

11  Kitchen to confirm that packages had been sent or were on their

12  way.  As Pitchell would describe it in her testimony, Kitchen

13  would call -- Kitchen would call Sweetland and send Sweetland

14  money.  Sweetland would then call her and have her do some

15  legwork in getting methamphetamine and sending packages, for

16  which she would then receive some money in exchange.

17      Eventually, Pitchell through her direct contact with

18  Mr. Kitchen began receiving money directly from Kitchen and

19  sending him packages.  She would also confirm that the

20  transactions in the conspiracy involved a total amount of

21  methamphetamine of well over 50 grams.

22      There would be further corroboration that the packages did

23  contain methamphetamine in the form of a package that police

24  intercepted on December 8 and its contents were sent to the

25  Wisconsin Crime Lab.  Andrew Schleis, an analyst at the

1    Wisconsin State Crime Lab, would testify to his background and

2    experience in testing controlled substances.  He would testify

3    that he tested the substances recovered from the December 8

4    package which was identified as having been sent from

5    Ms. Pitchell and that tested positive for the presence of

6    methamphetamine.

7         All this evidence would prove that there was conspiracy in

8    existence during the timeframe in the indictment in which

9    Ms. Pitchell, Mr. Sweetland, and Mr. Kitchen agreed and

10   conspired with one another to distribute methamphetamine, that

11   that conspiracy involved more than 50 grams of methamphetamine

12   taking place in the Western District of Wisconsin, that

13   involving Mr. Kitchen's residence in Cadott, Wisconsin, and that

14   each defendant was a knowing and willing member of that

15   conspiracy.

16              THE COURT:  And are you asking the Court to take

17   judicial notice that the defendant --

18              MR. ANDERSON:  That Cadott, Wisconsin is in the

19   Western District.

20              THE COURT:  That Cadott is in the Western --

21              MR. ANDERSON:  Yes, Your Honor.

22              THE COURT:  -- District of Wisconsin.  So ordered.

23       Mr. Sweetland, have you heard those statements offered by

24   the government's attorney?

25              DEFENDANT SWEETLAND:  Yes, Your Honor, I have.

1          THE COURT:  Are they true?

2          DEFENDANT SWEETLAND:  Yes, Your Honor.

3          THE COURT:  Do you agree with them?

4          DEFENDANT SWEETLAND:  In part I do, yes.

5          THE COURT:  And what part is it that you disagree?

6          DEFENDANT SWEETLAND:  I never physically shipped,

7    shipped any of the packages of crystal meth but I did make

8    Lauren aware of the fact that Mike -- I would say Mike called

9    me, he needs to speak with you.  I basically worked nothing more

10   than the financial liaisar [ph] -- financial liaison for the,

11   for the entire operation, but I did know that they were sending

12   drugs.

13         THE COURT:  And from whom was she getting the drugs?

14         DEFENDANT SWEETLAND:  That I couldn't tell you because

15   I, I wasn't a part of that.  I was basically sending back

16   information on cars, loaning Mike money, and then he was sending

17   me money back for the cars that they did work on and for the

18   drugs.  Then I would --

19         THE COURT:  So you did receive money?

20         DEFENDANT SWEETLAND:  Yes, sir, I did.

21         THE COURT:  For the distribution of methamphetamine?

22         DEFENDANT SWEETLAND:  Yes, sir, I did.

23         THE COURT:  Anything you wish to have elaborated based

24   upon the defendant's statement, Counsel?

25         MR. ANDERSON:  No.

1          THE COURT:  Let me ask you this, Mr. Sweetland.

2          DEFENDANT SWEETLAND:  Yes, sir.

3          THE COURT:  From on or about June 16, '05 until

4    December 8 of '05 in the Western District of Wisconsin and

5    elsewhere, did you, Timothy M. Sweetland, and Lauren F. Pitchell

6    and Mr. Kitchen conspire and agree with each other, and with

7    others perhaps, to knowingly and intentionally distributing

8    methamphetamine, a Schedule II controlled substance?

9          DEFENDANT SWEETLAND:  Yes, Your Honor.

10          THE COURT:  And do you also understand and agree that

11   this conspiracy involved 50 grams or more of a mixture or

12   substance containing methamphetamine in violation of Title 21,

13   United States Code, Section 841(a)(1)?  Is that your

14   understanding and agreement as well?

15          DEFENDANT SWEETLAND:  As I said, I didn't have

16   anything to do with the shipping of those so I'm assuming that

17   there was that, that amount or more.

18          THE COURT:  Do you believe that you had knowledge that

19   that was taking place?

20          DEFENDANT SWEETLAND:  I knew that they were sending

21   drugs, yes.

22          THE COURT:  All right.

23          DEFENDANT SWEETLAND:  I didn't know the volumes.

24          THE COURT:  So you did more than assuming.  You did

25   know.

1          DEFENDANT SWEETLAND:  Yes.

2          THE COURT:  All right.  And if indeed you were told

3   that this conspiracy did involve 50 grams or more of a mixture

4   or substance containing methamphetamine in violation of federal

5   law, would you disagree with that?

6          DEFENDANT SWEETLAND:  I don't quite understand the

7   question, Your Honor.

8          THE COURT:  Well, you said you didn't know how much

9   was involved.  You have heard from the government that 50 grams

10  or more of a mixture of meth was involved.  And I'm asking you,

11  now that you've been told that 50 grams of meth was involved do

12  you disagree with that?

13         DEFENDANT SWEETLAND:  I have to say I -- I have to say

14  I agree with it.  Like I said, I --

15         THE COURT:  I can't understand your answer.  It's a

16  very simple question.

17         DEFENDANT SWEETLAND:  I have no doubt that the

18  government could prove that, Your Honor.

19         THE COURT:  Thank you, sir.  Anything that the

20  government believes should be further asked of the witness at

21  this time?

22         MR. ANDERSON:  No, sir.

23         THE COURT:  You do understand, sir, that you are a

24  part of this indictment which is in Count 1 and that from on or

25  about June 16, '05 to December 8, '05 you and the other

1   defendants conspired and agreed with each other, and with

2   others, to knowingly and intentionally distribute

3   methamphetamine, a Schedule II controlled substance, with this

4   conspiracy involving 50 grams or more of a mixture or substance

5   containing meth in violation of federal law.

6       Is that your understanding and agreement of those

7   provisions in Count 1 of the indictment, sir?

8               DEFENDANT SWEETLAND:  Yes, Your Honor, it is.

9               THE COURT:  I want you to understand that if you plead

10  guilty, a presentence report will be prepared.  The Court will

11  then consider whether or not to accept the plea agreement.  If

12  the Court decides to reject the plea agreement, you will then

13  have the opportunity to withdraw your plea and change it to not

14  guilty.  Is that your understanding?

15              DEFENDANT SWEETLAND:  Yes, Your Honor, it is.

16              THE COURT:  How then do you now plead to the charge

17  in Count 1 of the indictment pending against you:  guilty or

18  not guilty?

19              DEFENDANT SWEETLAND:  Guilty, Your Honor.

20              THE COURT:  It's the finding of the Court in the case

21  of United States of America against Timothy M. Sweetland that

22  the defendant is fully competent and capable of entering an

23  informed plea, that he is aware of the nature of the charges and

24  the consequences of the plea, and that the plea of guilty is a

25  knowing and voluntary plea supported by an independent basis in

1  fact containing each of the essential elements of the offense.

2  The plea is therefore accepted.  Defendant is now adjudged

3  guilty of that offense in Count 1 as previously stated by the

4  Court.

5       At this time you are advised that a written presentence

6  report will be prepared.  That presentence report is to be

7  prepared within the next 35 days, not later than January 9 of

8  '08.  The parties do have 14 days thereafter, until

9  January 23rd of '08, to object to the provisions of the

10  presentence report, and the sentencing is scheduled for

11  February 13, '08 in this courtroom at 1:15 p.m.  Is that

12  agreeable to the defense attorney?

13          MR. JONES:  Yes, Your Honor.  I'm sorry, I didn't

14  catch the time but I'm free all day.  I know I can.

15          THE COURT:  1:15.

16          MR. JONES:  1:15.  Yes, Your Honor, thank you.

17          MR. ANDERSON:  That's fine, Your Honor.

18          THE COURT:  All right, that then is affirmed.

19       I am telling you at this time, Mr. Sweetland, that the

20  presentence report is to be reviewed and discussed by you and

21  your attorney.  The Court will have that written presentence

22  report prepared by the Probation Office to assist the judge in

23  sentencing, and it will be available for you on or about, as

24  I've previously stated, January 9th.  And to be cumulative, if

25  you do have objections you should arrange to have those served

1    on opposing counsel not later than January 23rd.

2              DEFENDANT SWEETLAND:  I understand, Your Honor.

3              THE COURT:  All right?

4              DEFENDANT SWEETLAND:  I understand.  Thank you.

5              THE COURT:  Uh-huh.  The written presentence report

6    will be prepared by the Probation Office, as I said, to assist

7    the Court in sentencing and you will be asked to give

8    information for that report.  Your attorney may be present

9    during those interviews if you wish.

10        The Court shall require that defendant and counsel read

11   the presentence report and file any objections to that report

12   which they believe are appropriate.  Defendant and his attorney

13   shall have the opportunity to speak on defendant's behalf at

14   the sentencing hearing.

15        You will continue to be detained pending sentencing in

16   this matter under the same conditions that you presently find

17   yourself.

18        Is there anything further that either counsel believes

19   should be brought to the defendant's attention at this time?

20   Mr. Jones?

21             MR. JONES:  No, Your Honor.

22             THE COURT:  Mr. Anderson?

23             MR. ANDERSON:  No, sir, Your Honor.

24             THE COURT:  All right, the Court affirms those dates

25   as previously provided and we may stand adjourned.

1          MR. JONES:  Thank you, Your Honor.

2          MR. ANDERSON:  Thank you.

3      (Proceedings concluded at 1:55 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   *I certify that the foregoing is a correct transcript from the
     electronic sound recording of the proceedings in the above-*
22   *entitled matter.*

23
     _____                    *2/27/08*
24   *Susan Barsness*                                        *Date*
     *Certified Transcriptionist*

25